# Exhibit B

# deeproot® STANDARD SIX MONTH FINDER AGREEMENT

This Standard Six Month Finder Agreement (the "Agreement") is made effective as of _July 28_____, 20_20_,

between **deeproot Funds, LLC**, a Texas limited liability corporation (the "Company"), and a(n) (***mark one***: individual / corporation / LLC / partnership) named, _Darryl Stein_____, who is a resident of, or operates under the laws of the State of _Florida_____ (the "Finder"). The Finder and the Company agree:

1. Scope of the Relationship: The Company hereby offers to the Finder, and the Finder hereby accepts such offer, to act as the Company's Finder with respect to sales by the Company in a private placement transaction (the "Investment") by and through submission of funds and an approved Application and Subscription Agreement (the "Application") of one of Company's private equity funds, **deeproot 575 Fund, LLC** ('the575') and/or **deeproot Growth Runs Deep Fund, LLC** ('dGRD') (jointly, the "Offering" or the "Securities") to Offerees during the term of this Agreement as set forth in Section 6.

2. Offering Procedures: The Finder will introduce the Company to investors who the Finder reasonably believes to be "accredited investors," as that term is defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended (the "1933 Act"); or any other suitable non-accredited investor that has been pre-approved and authorized by the Company, with whom the Finder has a pre-existing substantive relationship (the "Offerees").

3. Finder's Fee:

   (a) In consideration for the referral of Offerees, and adherence to the covenants of this Agreement, by the Finder hereunder, the Company shall pay Finder a Fee for each suitable Offeree whose Investment is approved and transaction is closed by the Company in the Offering. This Fee is not a commission, nor based on a percentage of assets invested. Rather the Fee is a preset amount distributed in $25,000 principal increments from $50,000 up to $799,999, and differentiated on whether the Investment is under the Annuity Replacement Program ("ARP") or not; as further enumerated in the attached Exhibit A. With the exception of applicability of 3(d) *infra*, this Fee comprises all fees or monetary sums owed under this Agreement per Investment per Application per Offeree.

   (b) The Company shall pay Finder by EFT/ACH/Direct Deposit within 5 business days of the Company's approval and closing of the position. The Finder and Company agree that it is Finder's responsibility to submit and keep-current Finder's depositing bank account information with the Company for purposes of payments of fees, as well as promptly submitting, upon Company's request, an IRS Form W-9 for tax reporting purposes.

   (c) A renewal of an Offeree's account, or future Offering by the Offeree with Company shall not give rise to a new, subsequent, or additional Fee unless:
   1. Company policies and state/federal law permit the additional Fee at that time; and
   2. the Finder is then: i) a currently registered FINRA registered Series 7 or 82 representative with an affiliate broker/dealer that has approved the Securities and/or Offering; or ii) under a same or similar finder Agreement with the Company.

   (d) When an Investment over $200,000.00 is received (and cleared/available for use) by the Company within ten business days of the date on the Offeree's Application, then Finder will receive an additional 25% of the Fee referenced in 3(a) *infra*.

   (e) The Company shall chargeback (being an offset or otherwise) Finder for any Fee paid to Finder on an Offeree who requests a cancellation or a substantial withdrawal of Principal after a respective Fee is paid, within the first three (3) months of the investment term. Furthermore, the Finder unconditionally and

irrevocably agrees to reimburse Company under this paragraph even if Finder is not then, or is no longer, under any contract or agreement with Company.

4. Certain Prohibitions Relating to Finder's Duties:

(a) The Finder's responsibilities shall be limited to introducing Offerees to the Company, and the Finder shall not have authority to offer or sell the Securities to any Offeree.

(b) The Finder shall not use any general solicitation or general advertising within the meaning of the applicable securities laws in connection with any offering.  This means that mass-mailings, public announcements, and/or dissemination through digital, radio, TV, or print media are all prohibited.

(c) Other than to facilitate communication and Finder's pre-existing relationship with an Offeree, the Finder shall have no responsibility to participate or assist in any solicitation or negotiations between any Offeree and the Company. The Finder will have no responsibility to act, and the parties contemplate that the Finder will not act, as an agent/advisor/representative/broker or dealer, etc., with respect to the offer or sale of the Securities.

(d) The Finder shall not act in an unlawful manner, which includes but is not limited to: solicitation without a license, unprofessional conduct, duress, misrepresentation, fraud, etc.

(e) The Finder agrees to introduce the Company to Offerees only in states in which the Finder has been advised by the Company that offers and sales of Securities can be legally made by the Company.

(f) The Finder is not and will not (at any time during or after the termination of this contract) act as an employee, independent contractor, or agent of the Company, nor communicate the same, and nothing in this Agreement shall be interpreted or construed to create any agency, employment, partnership, joint venture, or other relationship between the Finder and the Company. The Finder shall have no right or power to find or create any liability or obligation for or in the name of the Company or to sign any documents on behalf of the Company.

5. Finder's Duties:

(a) The Finder shall perform his/her/its duties under this Agreement in a manner consistent with the instructions of the Company, using professional conduct, as such conduct is reasonably accepted by the Financial Services and Securities industries.

(b) The Finder's duties may include, but not be limited to: the delivery of approved marketing materials, a serial assigned Private Placement Memorandum and Application/Subscription Agreement, and/or similar documents provided to the Finder by the Company, as such documents may be amended from time to time by the Company and delivered to the Finder.

(c) **Before any Offeree information is transmitted, the Finder must direct the Offeree to fill out and digitally submit a Pre-Qualification form found at: http://deeprootfunds.com/pre-qualify, or submit a Company-approved financial worksheet.**

(d) **Any *solicitation* (as such word is liberally construed) with the Offeree shall be made by a registered advisor or representative, employee, authorized agent, or officer of the Company.**

(e) The Finder shall keep a log of when and to whom ANY Company materials is given; maintain a copy of any written information the Finder creates or obtains regarding an Offeree; and only use Company approved materials when introducing Offerees to the Company. The Finder must provide this log and all such written information to the Company.

(f) It is the Finder's sole and exclusive responsibility to disclose to Offeree in writing: i) the limited scope of Finder's involvement in the transaction; ii) that Finder will be paid a Fee for the referral; and iii) the amount

of that Fee.  In addition, the Company will notify, and Offeree will acknowledge, the same on the Application.

6.  Termination of Agreement: Either party may terminate this Agreement with five (5) business days notice by notifying the other party in writing. This Agreement will otherwise terminate by agreement and operation of law upon the six month anniversary of the effective date of the contract.  The Finder shall be entitled to any finder's fee(s) under Section 3 based on referrals made by Offerees, and approved by Company, prior to the termination of this Agreement; save and except for any material breach by Finder of this Agreement. All materials in Finder's possession must be returned to Company. Finder shall not have any further right of access to any of Company's digital systems or to represent or make requests (in any form) for any referred Offeree. And Finder may not act with any affiliation or agency with respect to Company, in any form, thereafter.

7.  Indemnification: The Company and the Finder each shall indemnify and defend the other and the other's affiliates, directors, officers, employees, agents, consultants, attorneys, accountants and other representatives (each an "Indemnified Person") and shall hold each Indemnified Person harmless, to the fullest extent permitted by law, from and against any and all claims, liabilities, losses, damages and expenses (including reasonable attorney's fees and costs), as they are incurred, in connection with the Offering, resulting from the indemnifying party's negligence, bad faith or willful misconduct in connection with the Offering, any violation by the indemnifying party (not caused by an Indemnified Person) of Federal or state securities laws in connection with the Offering, or any breach by the indemnifying  party of this Agreement. In case any litigation or proceeding shall be brought against any Indemnified Person under this section, the indemnifying party shall be entitled to assume the defense of such litigation or proceeding with counsel of the indemnifying party's choice at its expense (in which case the indemnifying party shall not be responsible for the fees and expenses of any separate counsel retained by such Indemnified Person, except in the limited circumstances described below in this section); provided, however, that such counsel shall be reasonably satisfactory to the Indemnified Person. Notwithstanding the indemnifying party's election to assume the defense of such litigation or proceeding (a) such Indemnified Person shall have the right to employ separate counsel and to participate in the defense of such litigation or proceeding, and (b) the indemnifying party shall bear the reasonable fees, costs and expenses of separate counsel if (but only if) the use of counsel selected by the indemnifying party to represent such indemnified Person would present such counsel with a conflict of interest under applicable laws or rules of professional conduct.

8.  Confidentiality of Offeree Information: The Company and Finder both acknowledge that the identity and all personally-identifiable or confidential information about an Offeree may not be shared with any other person without the express written consent of the Offeree.

9.  Confidentiality of Company Information: The Finder, and its officers, directors, employees and agents shall maintain in strict confidence and not copy, disclose or transfer to any other party **(a)** all confidential business and financial information regarding the Company and its affiliates, including without limitation, any fund documentation or memorandum, etc., projections, business plans, marketing plans, product development plans, pricing, costs, customer, vendor and supplier lists and identification, channels of distribution, and terms of identification of proposed or actual contracts; and **(b)** all confidential technology of the Company. In furtherance of the foregoing, the Finder agrees that it shall not transfer, transmit, distribute, download or communicate, in any electronic, digitized or other form of media, any of the confidential technology of the Company. The foregoing is not intended to preclude the Finder from utilizing, subject to the terms and conditions of this Agreement, the Private Placement. Memorandum and/or other documents prepared or approved by the Company for use in the Offering.  If the Offering is not consummated, or if at any time the Company so requests, the Finder and its representatives will return to the Company all copies of information regarding the Company in their possession.  The provisions of this Section shall survive any termination of this Agreement.

10.  Notices: Any notice, consent, authorization or other communication to be given hereunder shall be in writing and shall be deemed duly given and received when delivered personally, or when transmitted by email, fax, first class mail, or by a nationally recognized overnight delivery service, charges and postage prepaid, properly addressed

to the party to receive such notice, at the following address, email, or fax number for such party (at such address, email, or fax number as shall hereafter be specified by such party by like notice):

    (a) If to the company, to:

        deeproot Funds, LLC                 Office:   (888) 316-2935

        P.O. Box 691610                  Fax:     (888) 316-2782

        San Antonio, TX 78269-1610      Email:   contact@deeprootfunds.com

    (b) If to the Finder, to:



Darryl Stein _____ (Name)

(Street)

(City, State Zip)

(Phone)

(Fax)

(Email)

11.  Company to Control Transactions: The rates, terms, and conditions under which the Company shall offer or sell any Securities shall be determined by the Company in its sole discretion. The Company shall have the authority to control all discussions and negotiations regarding any proposed or actual offering or sale of Securities. Nothing in this Agreement shall obligate the Company to actually offer or sell any Securities or consummate any transaction. The Company may terminate any negotiations or discussions at any time and reserves the right not to proceed with any offering or sale of Securities. Fees pursuant to this Agreement shall only be paid to the Finder in the event of an actual Closing of the Offering to an Offeree introduced by Finder.

12.  Taxes and Expenses, Etc.: The Fee described in Section 3 of this Agreement shall be the Finder's sole consideration for all of his/her/its efforts to the Company and its affiliates, in connection with any offering or placement of Securities. The Finder shall be exclusively responsible for any and all taxes, or any compensation, fees, commissions or payments of his/her/its employees, agents representatives, co-Finders or other persons or entities utilized by it in connection with his/her/its activities on behalf of the Company, and the Finder will indemnify and hold harmless the Company and its affiliates from the claims of any such persons or entities.

13.  Compliance with Laws: The Finder represents and warrants that he/she/it shall conduct in compliance with applicable federal and state laws relating to a private placement under Sec. 506(b) of Regulation D of the 1933 Securities Act. The Finder represents that it is not a party to any other agreement, which would conflict with or interfere with the terms and conditions of this Agreement.

14. Assignment Prohibited: No assignment of this Agreement, or fee hereunder, shall be made without the prior written consent of the other party, or by court order.

15. Amendments: Neither party may amend this Agreement or rescind any of its existing provisions without the prior written consent of the other party.

16. Governing Law: This Agreement shall be deemed to have been made in the State of Texas and shall be construed, and the rights and liabilities determined, in accordance with the law of the State of Texas, without regard to the conflicts of laws rules of such jurisdiction.

17. Waiver: Neither Finder's nor the Company's failure to insist at any time upon strict compliance with this Agreement or any of its terms nor any continued course of such conduct on their part shall constitute or be considered a waiver by Finder or the Company of any of their respective rights or privileges under this Agreement.

18. <u>Severability</u>: If any provision herein is or should become inconsistent with any present or future law, rule or regulation of any sovereign government or regulatory body having jurisdiction over the subject matter of this Agreement, such provision shall be deemed to be rescinded or modified in accordance with such law, rule or regulation. In all other respects, this Agreement shall continue to remain in full force and effect.

19. <u>Counterparts</u>: This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties at such time as all of the signatories hereto have signed a counterpart of this Agreement. All counterparts so executed shall constitute one Agreement binding on all of the parties hereto, notwithstanding that all of the parties are not signatory to the same counterpart. Each of the parties hereto shall sign a sufficient number of counterparts so that each party will receive a fully executed original of this Agreement.

20. <u>Entire Agreement</u>: This Agreement and all other agreements and documents referred herein constitutes the entire agreement between the Company and the Finder. No other agreements, Covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other party concerning the subject matter hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereof are merged herein. This is an integrated Agreement.

21. <u>Arbitration</u>: The parties agree that this Agreement and all controversies which may arise between the Finder and the Company, whether occurring prior, on or subsequent to the date of this Agreement, will be determined by arbitration under and through the American Arbitration Association (AAA), including their rules, forms and policies for Financial Services disputes, that exists at that time, to be arbitrated by one or more odd-numbered arbitrators, to be heard and adjudicated in Bexar County, Texas. The parties understand that:  (a) Arbitration is final and binding on the parties; (b) The parties are waiving their right to seek remedies in court, including the right to a jury trial; (c) Pre-arbitration discovery is generally more limited than and different from court proceedings; (d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification or rulings by the arbitrators is strictly limited. The award of the arbitrators, or of the majority of them, will be final, and judgments upon the award may be entered in any court, state or federal, having jurisdiction. The parties hereby submit themselves and their personal representatives to the jurisdiction of any state or federal court for the purpose of such arbitration and entering such judgment.

THIS AGREEMENT IS GOVERNED BY A PRE-DISPUTE ARBITRATION CLAUSE CONTAINED IN PARAGRAPH 21 OF THIS AGREEMENT

Witness our hands on this __28__ day of _____July_____, 20_20_ in full agreement and accord of the foregoing terms, provisions, covenants and duties.

_____
COMPANY SIGNATURE

BY: Robert J. Mueller

TITLE: Principal

_____
FINDER SIGNATURE

BY: _____

TITLE: _____

# EXHIBIT A

| RANGE OF PRINCIPAL | | ARP | NON-ARP |
|---|---|---|---|
| $50,000.00 | $74,999.00 | $ 3,198.78 | $ 3,439.55 |
| $75,000.00 | $99,999.00 | $ 6,033.09 | $ 6,156.22 |
| $100,000.00 | $124,999.00 | $ 8,261.53 | $ 8,517.04 |
| $125,000.00 | $149,999.00 | $ 10,142.66 | $ 10,456.35 |
| $150,000.00 | $174,999.00 | $ 11,798.15 | $ 12,163.04 |
| $175,000.00 | $199,999.00 | $ 13,319.33 | $ 14,020.35 |
| $200,000.00 | $224,999.00 | $ 16,379.96 | $ 17,062.46 |
| $225,000.00 | $249,999.00 | $ 17,961.24 | $ 18,906.57 |
| $250,000.00 | $274,999.00 | $ 20,581.19 | $ 21,217.73 |
| $275,000.00 | $299,999.00 | $ 21,442.67 | $ 23,307.25 |
| $300,000.00 | $324,999.00 | $ 22,978.40 | $ 24,707.96 |
| $325,000.00 | $349,999.00 | $ 24,833.68 | $ 26,702.88 |
| $350,000.00 | $374,999.00 | $ 28,235.31 | $ 29,411.78 |
| $375,000.00 | $399,999.00 | $ 30,264.71 | $ 31,525.74 |
| $400,000.00 | $424,999.00 | $ 32,571.79 | $ 35,023.43 |
| $425,000.00 | $449,999.00 | $ 35,339.65 | $ 37,199.63 |
| $450,000.00 | $474,999.00 | $ 38,254.27 | $ 39,848.19 |
| $475,000.00 | $499,999.00 | $ 38,999.30 | $ 41,934.73 |
| $500,000.00 | $524,999.00 | $ 41,571.66 | $ 45,186.58 |
| $525,000.00 | $549,999.00 | $ 44,090.09 | $ 47,924.02 |
| $550,000.00 | $574,999.00 | $ 47,050.87 | $ 50,054.11 |
| $575,000.00 | $599,999.00 | $ 48,203.79 | $ 52,971.20 |
| $600,000.00 | $624,999.00 | $ 51,608.83 | $ 56,096.55 |
| $625,000.00 | $649,999.00 | $ 53,080.70 | $ 58,330.44 |
| $650,000.00 | $674,999.00 | $ 56,947.02 | $ 61,233.35 |
| $675,000.00 | $699,999.00 | $ 59,430.75 | $ 64,598.64 |
| $700,000.00 | $724,999.00 | $ 63,261.46 | $ 67,299.43 |
| $725,000.00 | $749,999.00 | $ 64,520.17 | $ 70,130.62 |
| $750,000.00 | $774,999.00 | $ 68,433.14 | $ 73,584.02 |
| $775,000.00 | $799,999.00 | $ 69,672.70 | $ 76,563.41 |
| $800,000.00 | + | By Agreement | By Agreement |