**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiff**<br><br>**v.**<br><br>**ROBERT JEFFREY MUELLER**<br><br>**Defendant** | **Case No.: 5:24-CR-00563-XR** |

**DEFENDANT'S REPLY REGARDING MOTION *IN LIMINE***

TO THE HONORABLE COURT:

Defendant Robert Jeffrey Mueller ("**Mr. Mueller**" or "**Defendant**") files this Reply Regarding Motion *in Limine*, and in support would respectfully show:

## I.   INTRODUCTION

Mr. Mueller filed his Motion *In Limine* (ECF No. 61, the "**Motion**") on March 27, 2026, when it appeared that Mr. Mueller would be facing trial on allegations included in the Superseding Indictment. The Motion therefore pointed out various ways in which the Government's evidence conflicted with the allegations in that pleading. The Court then granted Mr. Mueller's motion to extend the trial date and set a new deadline for the filing of motions in limine. *See* ECF No. 63. Shortly thereafter, the Government indicated it intends to amend its pleading for a second time, presumably to address issues raised in the Motion and other recent filings. Mr. Mueller therefore reserves the right to reassert challenges to the new Second Superseding Indictment (should one be filed) and to the Government's evidence, including appropriate motions in limine.

The Government's Response to Defendant's Motion *In Limine* (ECF No. 65, the "**Response**") includes a few concessions that may somewhat narrow the issues before the Court,

which are noted below. But it also appears the Government remains intent on introducing evidence that is not supported by the Rules of Evidence or is inconsistent with its current charging document. Mr. Mueller therefore requests the Court grant its Motion in *Limine* on the terms detailed below.[1]

## II.    REQUESTS TO EXCLUDE OR LIMIT EVIDENCE

### A.  Evidence Regarding Statements Not Attributable to Mr. Mueller

As detailed in the Motion, most of the investors in the Deeproot companies never met Mr. Mueller. Some investors recalled participating in a PowerPoint presentation from one of Deeproot's sales representatives, but many did not. A number of investors—including several identified in the Superseding Indictment—received and relied upon information solely provided by "finders," independent financial advisors who were paid fees for referring investors to Deeproot. These finders signed contracts directing them not to discuss the Deeproot business with potential investors, but rather to leave the description of the potential investment to Deeproot staff and related documents. *See* Motion Ex. B (Finders Agreement); Motion, Ex. C (presentation to finders). According to Government interviews with those investors, it appears that some of those finders went rogue and gave investors incorrect information about Deeproot, including that Deeproot is an annuity, that Deeproot only invested in insurance policies, that Deeproot was "totally insured," and other claims that were never communicated, approved, or even known by Mr. Mueller or others at Deeproot.

The Response does not appear to dispute that the Government intends to introduce evidence of such unauthorized statements from finders to investors. The Response offers an assortment of purported justifications for the use of this evidence, each of which either misstates Mr. Mueller's argument or ignores the law.

---

[1] A proposed order has been filed with this Reply.

The Response first lists the statements made directly by Deeproot and approved by Mr. Mueller, including those included in PPMs, PowerPoint presentations, and direct statements by Mr. Mueller to finders. But the Motion did not ask the Court to exclude PPMs, PowerPoints, or other statements that can be directly attributed to Mr. Mueller. Indeed, the Motion argued that such statements are the *only* statements that should be admissible as evidence of the alleged scheme to defraud. Mr. Mueller stands by those statements and is prepared to demonstrate that they are not materially misleading.

The Response next asks the Court for permission to present evidence of statements other than those that can be attributed to Mr. Mueller, arguing that "Defendant chose the model by which victim investors would be recruited (through finders), hired employees to reach out to finders, and created all materials provided to finders and investors." Response at 2. Put another way, the Government wants to prosecute Mr. Mueller for statements he did not make, direct, approve, condone, or even know were being made, merely because he allegedly created the system that led to the involvement of finders.

But this is not a civil case. The Government may not prosecute Mr. Mueller based on his purported negligence in overseeing Deeproot's independent contractors. It certainly may not prosecute him based on some sort of strict liability standard that attributes to him every statement made by any person who may have received a check from Deeproot. To the contrary, the Government must prove that *Mr. Mueller* made or directed others to make false representations and did so with intent to defraud. *See United States v. Harris*, 821 F.3d 589, 598 (5th Cir. 2016) ("Our case law indicates that in order to show a scheme to defraud, the government 'ha[s] to prove that [the defendant] made some kind of a false or fraudulent material misrepresentation.'") (*quoting United States v. Curtis*, 635 F.3d 704, 718 (5th Cir. 2011)); *see also* Fifth Circuit Pattern

3

Jury Instructions (Criminal Cases) § 2.57. Statements by finders that Mr. Mueller did not authorize—and, indeed, went to great lengths to prevent—do not meet this standard.

The Government's reference to its obligation to prove the use of interstate wires is similarly off base. The Response argues that it was "reasonably foreseeable to Defendant that promulgating *his* statements and omissions to employees and finders alike would cause interstate wire communications to be used." Response at 2 (emphasis added). But, again, the Motion did not ask the Court to exclude *Mr. Mueller's* statements. Mr. Mueller also does not dispute that the Government must prove that *Mr. Mueller* took an action with knowledge that use of interstate wire facilities would likely follow. But, as detailed in the Motion, statements that were *not* made, directed, or otherwise attributable to Mr. Mueller cannot be evidence of a scheme to defraud directed by Mr. Mueller. Similarly, such statements cannot be evidence that Mr. Mueller took an act that he knew would result in the use of interstate wire facilities. The Response's reference to use of interstate wires is thus entirely unresponsive to the argument made in the Motion.

The Response's discussion of the hearsay rules is similarly beside the point. The Government may be right that "[m]ost statements by finders" would not be offered for the truth of the matter asserted and thus be non-hearsay. Response at 2. But to the extent that the Government does introduce such statements for the truth of the matter asserted (e.g., that Mr. Mueller or Deeproot employees made a particular statement), Mr. Mueller reserves the right to challenge such testimony on any and all relevant grounds. *See* Fed. R. Evid. 801.

As detailed in the Motion, introduction of finders' statements to investors that cannot be attributed to Mr. Mueller are not relevant to any element of the alleged offense and, if nonetheless introduced, would be highly prejudicial. *See* Fed. R. Evid. 401, 403. The Court should therefore

4

exclude statements of finders to investors that were not made, authorized, or otherwise attributable to Mr. Mueller.

## B. Statements to Investors That Are Not Relevant to the Alleged Scheme to Defraud

The Motion asks the Court to exclude evidence regarding false or misleading statements other than those identified in the Superseding Indictment. Such statements could constitute a material variance or constructive amendment to Superseding Indictment or Rule 404(b) evidence, for which the Government has provided no notice. Mr. Mueller also filed a Motion for Bill of Particulars, which asks for clarification on the Superseding Indictment's allegation that Mr. Mueller misrepresented the "financial condition" of Deeproot. *See* ECF No. 60. The Government's Response appears intended to address both the Motion and the Motion for a Bill of Particulars, though it does not fully address either filing.

The Government claims that the term "financial condition" includes a "non-exclusive" list of alleged misrepresentations, including "depending on time, Pinball had or would shortly launch"; that "delays in payments to investors were because Wells Fargo had a glitch or because deeproot had changed custodian"; and "that the SEC investigation was routine and nothing to worry about." Response at 3. It further claims that the term includes a "non-exclusive" list of alleged omissions, including various alleged omissions regarding the Basha policy; that "Defendant used investor money to pay Defendant's personal credit cards and expenses"; that Defendant received additional payment beyond his compensation"; and that "deeproot pinball had a failed launch in September 2020." *Id.* at 2-3. This purported disclosure is inadequate for several reasons.

First, the Response demonstrates why it is critical that the Government disclose the basis of its allegations well in advance of trial. The Government raises several of the above allegations for the first time in the Response, including that Mr. Mueller allegedly misrepresented that "Wells

5

Fargo had a glitch," "deeproot had changed custodians," Deeproot pinball had a "failed launch," and that the SEC investigation was "routine." Mr. Mueller expects to be able to produce evidence—or seek evidence from the Trustee or other third parties—demonstrating that there were payment processing problems at Wells Fargo, that Deeproot did change the bank at which it received investor payments, that problems with the pinball launch were very public and not hidden, and that Mr. Mueller had reason to believe the SEC investigation was "routine," among other potentially exculpatory evidence. Notably, had the Court not granted Mr. Mueller's request for a continuance, Mr. Mueller would have been forced to address such allegations for the first time during trial, with obvious unfair prejudice to Mr. Mueller.[2]

Second, several of the alleged misstatements and omissions are not plausibly related to Deeproot's "financial condition." For example, software "glitches" at Wells Fargo, technical issues with the pinball launch, a change in custodian, and the purported seriousness of the SEC's investigation are not "financial" issues. As pliable as the term "financial condition" may be, it can only be stretched so far. To allege that Mr. Mueller committed wire fraud based on the above allegations—and any similar allegations the Government made come up with before trial—would constitute a material variance or even a constructive amendment of the indictment. Alternatively, such evidence could constitute inadmissible Rule 404(b) evidence.

Third, the Government's statement that these alleged misstatements and omissions are "non-exclusive" fails to give Mr. Mueller adequate notice of the allegations against him. *See United States v. Davis*, 53 F.4th 833, 845 (5th Cir. 2022) (holding that the purpose of a bill of

---

[2] Some of this potentially exculpatory evidence is believed to be in the possession of the SEC, which Mr. Mueller maintains can be considered part of the prosecution team for the purposes of *Brady*, *Giglio*, and other discovery obligations. The Government has indicated that it disagrees with that assertion. Nonetheless, Mr. Mueller reserves all rights in this regard.

particulars is to inform a defendant "of the charges against him with enough detail to allow him to prepare a defense"). The Government has already shown a willingness to add new allegations on the eve of trial, including those noted above. It also cannot rely solely on the discovery produced in this case to provide notice, as many of the new allegations require new discovery (as noted above). This case is now nearly two years old and the investigation is nearly five years old. By now, the Government should be able to identify with some certainty what it alleges Mr. Mueller did to violate the law.

Mr. Mueller therefore requests the Court grant Mr. Mueller's Motion for a Bill of Particulars and direct the Government to provide a definitive list of the alleged misstatements and omissions that it contends are the basis of its claims against Mr. Mueller.

C. **Testimony of Thomas Andrew**

The Response makes clear that Mr. Andrew will be the centerpiece of the Government's case against Mr. Mueller, noting that it intends to elicit from Mr. Andrew testimony that Mr. Mueller did not purchase any insurance policies after 2017, that Mr. Mueller borrowed against the Basha policy, and eventually had to return the policy to Mr. Andrew, among other testimony. But, as noted in the Motion, none of that testimony is relevant to the allegations included in the Superseding Indictment, including the allegation that Mr. Mueller misrepresented the "financial condition" of Deeproot during the relevant time period. As the Government has indicated that it intends to seek a Second Superseding Indictment, Mr. Mueller reserves further challenge to the scope of Mr. Andrew's testimony until the Government has decided how exactly it intends to charge Mr. Mueller.

But the Response makes clear that the Government intends to make Mr. Andrew's testimony about his interactions with Mr. Mueller a centerpiece of tits case. This testimony appears

to go far beyond allegedly false statements Mr. Mueller made to investors, of which Mr. Andrew has no knowledge. Rather, it appears the Government intends to elicit testimony about conversations, emails, contracts, understandings, and disagreements between Mr. Andrew and Mr. Mueller. This is precisely the sort of complex testimony that Mr. Mueller warned the Government would elicit in his response to the Government's first Motion *In Limine* to Exclude Evidence, which sought to limit the scope of Mr. Mueller's cross-examination of Mr. Arnold. *See* ECF No. 36. The Court's order granting that motion likewise warned the Government to keep Mr. Andrew's testimony tightly focused on the elements of the alleged offense, lest it "open the door" to a more robust cross-examination. ECF No. 38 ("But should the Government open the door to this issue in its case in chief, this ruling may be revisited."). The testimony the Government apparently intends to elicit from Mr. Arnold would kick that door wide open.

Given the Response's description of the scope and importance of Mr. Andrew's testimony, cross-examination regarding Mr. Andrew's credibility, character for truthfulness, and motive to curry favor with the Government will be critical. Mr. Mueller urges the Court not to tie Mr. Mueller's hands and to permit Mr. Mueller to cross-examine Mr. Andrew to the full extent permitted by the Federal Rules of Evidence and Mr. Mueller's Constitutional rights to confront the witnesses against him.

D. **Evidence Regarding the Impact of Lost Investments**

The Motion asks the Court to exclude as irrelevant any unduly prejudicial testimony regarding the harm caused by the losses investors suffered, including but not limited to any personal hardships they may have suffered. *See* Fed. R. Evid. 401, 403; *United States v. Copple*, 24 F.3d 535, 544-547 (3d Cir. 1994) (holding the district court erred in permitting evidence of the "particular personal or professional impact the losses had"). Based on the Response, it appears the

Government does not intend to elicit any such testimony. Rather, the Response claims the Government will only introduce evidence regarding the source of investor funds, the portion of investor assets invested in Deeproot, and the amount of investment that was lost. *See* Response at 6. Most of this information can be found in investors' Subscription Agreements and other documents used by Deeproot to determine whether an investor was accredited, which will likely be in evidence. To the extent the Government goes beyond the testimony identified in the Response, Mr. Mueller reserves the right to seek to exclude such testimony.

### E.  <u>Use of the Terms "Victim" or "Victim Investors"</u>

The Motion asks the Court to direct the Government and its witnesses not to use the term "victim" or "victim investors" to describe the people who invested in Deeproot, noting that the use of such terms in unnecessary and unduly prejudicial. In its Response, the Government insists that the Deeproot investors are "victims" because they lost money and compared these investors to people suffer from natural disasters, military action, market crashes, and other unfair circumstances. *See* Response at 7. This argument is entirely divorced from the law and from common sense.

People who lose money when a business does not succeed are not necessarily "victims." Such people may just as easily be investors who made a business calculation that turned out to be wrong. These investors only become "victims" if something inappropriate was done ***to*** them. That is precisely what the Government must prove in this case. Permitting the Government, its counsel, or its witnesses to incant the phrase "victim investors" communicates to the jury that the investors suffered some sort of injustice, which inappropriately gives the Government a head start in proving that Mr. Mueller committed a crime.

As the Motion points out, that inappropriate and undue prejudice is why court after court—including a court in this District—has directed the Government not to use the term "victim" in criminal cases. *See United States v. August*, 590 F.Supp.3d 972, 974 (W.D. Tex. 2022) (holding that the Government's use of the term "victim" to describe individuals allegedly harmed by the defendant's actions "is unfairly prejudicial as it encourages the jury to find guilt from improper reasoning, i.e., due to the implication that a crime has already been committed by Defendant"); *see also United States v. Hollington*, Case No. 3:22-cr-141, 2023 WL 4315747, at *8 (M.D. Fla. July 3, 2023) (holding that "the Government may not refer to the patients as 'victims" throughout the trial"); *United States v. Spayd*, Case No. 3:19-cr-0111, 2022 WL 4367621, at *11 (D. Alaska Sept. 20, 2022) (granting motion in limine and precluding the Government and its witnesses from using the term "victim"); *United States v. Sena*, No. 19-CR-01432, 2021 WL 4129247, at *1 (D.N.M. Sept. 9, 2021) ("Mr. Sena is correct that the term is prejudicial when the core issue at trial is whether a crime has been committed—and therefore, whether there is a victim.").

The Response does not address any of these cases. Indeed, the Response does even explain why the Government needs to use the phrase "victim" or "victim investors." As noted in the Motion, there is no reason the Government needs to use the term "victim" to identify people who invested in Deeproot. These people could just as easily be called "investors," thereby avoiding unfair prejudice to Mr. Mueller. The Court should therefore direct the Government and its witnesses not to use the term "victim" or "victim investors" before the jury.

**F.  Use of the Terms "Ponzi" or "Ponzi-like"**

The Motion recognizes that the trial in this case could involve some references to the term "Ponzi," given that the Government appears likely to introduce a letter from Scott Allen to Mr.

Mueller that uses the term, among other documents.[3] The Motion nonetheless requests that the Court order the Government not to use the phrase outside of references to evidence that uses the term. In particular, in its civil litigation against Mr. Mueller, the SEC repeatedly used the phrase "ponzi-like payments" to refer to the monthly payments made to certain investors in the 575 Fund. *See e.g.*, SEC Case, ECF No. 1. There is no reason to use a loaded and prejudicial phrase like "ponzi-like" when a more neutral phrase like "575 payments" or "monthly payments" would just as readily describe these payments. Based on the Response, it does not appear that Government in this case intends to use the term "ponzi" in that way, but Mr. Mueller reserves the right to object to any such use if the Government reverses course.

### G.  Evidence Regarding Payments to Mr. Mueller

As noted in the Motion, it now appears the Government intends to present evidence that Mr. Mueller received a salary and non-payroll compensation from Deeproot. The Motion sought to exclude evidence regarding Mr. Mueller's use of this non-payroll compensation, which includes payments for personal items such as jewelry, travel, and tuition for his daughter. Such evidence would be irrelevant to any element of the Government's claims and highly prejudicial. Mr. Mueller therefore offered to confer on and potentially stipulate to the amount of payroll and non-payroll compensation to avoid the need to present any unfairly prejudicial evidence.

The Government's Response to this portion of the Motion is a few short sentences, amounting to little more than the assertion that the evidence is relevant to showing Mr. Mueller's alleged intent to defraud. *See* Response at 9. The Government does not acknowledge the obvious prejudice that could arise from the introduction of such evidence, instead merely announcing that

---

[3] Mr. Mueller reserves all rights to challenge the admissibility of that letter on hearsay or other appropriate grounds.

"[i]t is not unduly prejudicial." *Id.* The Response does not mention Mr. Mueller's offer to stipulate to the amounts of payroll and non-payroll compensation. *See id.* The Government's brusque dismissal of these concerns is insufficient.

The Response ignores the substantial case law examining whether and under what circumstances such evidence may be introduced. In *United States v. Huffine*, No. CR.A. 02-93, 2003 WL 122313, at *1 (E.D. La. Jan. 13, 2003), for example, the Government sought to introduce evidence of the specific personal expenses paid for by the defendant's use of corporate funds, arguing that the evidence was relevant to the defendant's "motive" to commit mail fraud and tax evasion. The court observed that evidence of the specific personal expenses paid for by corporate funds was only "marginally relevant" to the Government's allegations, as the source of the funds was not contested and the amount of expenditures was "relatively small." *Id.* at *2-3.[4] That "marginal" relevance was substantially outweighed by the potential unfair prejudice, including that a jury "may be persuaded to convict Defendant because it believes that it is illegal to use corporate funds to pay personal expenditures, . . . even though an owner of a corporation is entitled to do so without necessarily committing a crime." *Id.* at *3-4. The court also expressed concern that "the amount of trial time both sides will need to present this portion of the case will likely overwhelm the amount needed to address other all other issues." *Id.* at *4. The court therefore granted the defendant's motion in limine to exclude the evidence.

Other courts addressing cases in which the source of funds was not at issue have similarly concluded that any relevance of the defendant's use of funds to showing fraudulent intent was

---

[4] The Court therefore distinguished *United States v. Jensen*, 41 F.3d 946, 952 (5th Cir. 1994), in which "evidence of the extremely large sums of personal expenditures [was relevant] to prove that the defendant actually received the money fraudulently and illegally." *Huffine*, 2003 WL 122313, at *2-3.

substantially outweighed by undue prejudice to the defendant. *See, e.g.*, *United States v. Holmes*, Case No. 5:18-cr-00258-EJD-1, 2021 WL 2044470, at *5-6 (N.D. Cal. 2021) (granting in part a motion in limine to exclude certain evidence regarding "lavish spending habits," holding that any relevance to motive for committing crimes was substantially outweighed by "highly improper" appeals to "class prejudice"); *United States v. Hatfield*, 685 F.Supp.2d 320, 326 (E.D.N.Y. 2010) (noting that "the relevant question is not how he acquired the money he used to fund his extravagant lifestyle[, but] whether the stock trades and compensation methods he used to acquire this money were legal," and holding "it is irrelevant if [the defendant] spent his fortune on lavish parties, instead of donating it to starving Malawian orphans").

As in these cases, there is no dispute regarding the source of the funds received by Mr. Mueller—Deeproot provided Mr. Mueller with a salary in addition to occasional non-payroll compensation. The amount of salary and compensation would also not be in dispute, as Mr. Mueller is willing to confer and potentially stipulate to the amounts.[5] The Government does not (and cannot) claim that it was illegal or even improper for a wholly owned entity like Deeproot to make distributions, loans, or pay the expenses of its owner. The Government does not contend the ways in which Mr. Mueller spent his salary are relevant. It does not allege that there would be anything inappropriate in Mr. Mueller spending money on his daughter's tuition, his wedding, or other personal expenses if the money used to pay for those expenses had been routed through Deeproot's payroll.

The Government is therefore left with the claim that Mr. Mueller spending of non-payroll compensation is relevant to show that Mr. Mueller kept Deeproot going because he needed to pay

---

[5] It also should not be seriously dispute that the amounts paid to Mr. Mueller are far from extravagant, as they are believed to total approximately $2-2.5 million over the seven-years Deeproot existed—about $300-400,000 per year in salary and other compensation.

13

for personal expenses. That logic could just as easily apply to Mr. Mueller's interest in maintaining his salary and does not require a detailed description of how Mr. Mueller spent the money he received. Even if the Court were to indulge the Government and find the evidence to be of some marginal relevance, that relevance would be soundly outweighed by the substantial unfair prejudice, including the false impression that there is something necessarily improper with using corporate funds for owner expenses and the substantial amount of trial time that would be necessary to rebut such a false impression.

The Court should therefore exclude any evidence regarding the manner in which Mr. Mueller spent the salary or personal expenses received from Deeproot under Federal Rules of Evidence 401 and 403.

### H.  Limitations on Deposition Testimony of Mr. Mueller

The Motion asks for advance notice of the clips from Mr. Mueller's deposition in the SEC case and investigation the Government plans to introduce so the parties can confer on evidentiary issues and Mr. Mueller can identify any appropriate clips to be played along with those selected by the Government. The Response includes a lengthy argument that Mr. Mueller is not entitled to request that "any" clips from the deposition under Rule 106 be played, which is a misstatement of Mr. Mueller's request. The Motion seeks only the opportunity to request "any *appropriate*" clips that may be permitted by the Rules of Evidence. Motion at 19 (emphasis added). Mr. Mueller agrees with the Government that there should be "case-by-case evaluation" of clips proposed by either the Government or Mr. Mueller. Response at 11. Mr. Mueller reserves all other rights to challenge clips proposed by the Government as may be appropriate under the Rules of Evidence.

**I.** **No Expert or Opinion Testimony**

The Response states that the Government does not intend to introduce any expert testimony, only summary evidence by lay witnesses. Given that declaration, Mr. Mueller reserves the right to object to any testimony of Government witnesses that may fall outside the bounds set by the Rules of Evidence.

**J.** **No allegations, Orders, or Agreements from the SEC Case or Adversary Case**

The Response indicates that the Government does not intend to introduce any extrinsic evidence of the orders or agreements from the SEC Case or Adversary Case, which is consistent with the request made in the Motion. Mr. Mueller reserves the right to object to any such evidence should the Government seek to introduce it.

## III.    CONCLUSION

For the reasons stated above, Mr. Mueller respectfully requests the Court exclude evidence and/or enter other appropriate orders, as detailed above.

DATED: April 23, 2026.

Respectfully submitted,

**DAVIS & SANTOS, PLLC**

By: */s/ H. Jay Hulings*

Jason M. Davis
State Bar No. 00793592
Email: jdavis@dslawpc.com
H. Jay Hulings
State Bar No. 24104573
E-mail: jhulings@dslawpc.com
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

***Attorneys for Defendant***
***Robert Jeffrey Mueller***

## CERTIFICATE OF SERVICE

I certify that on April 23, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

*/s/ H. Jay Hulings*

H. Jay Hulings