**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>    **Plaintiff**<br><br>        **v.**<br><br>**ROBERT JEFFREY MUELLER**<br><br>    **Defendant** | **Case No.: 5:24-CR-00563-XR** |

## DEFENDANT'S MOTION TO DISMISS COUNT SIX OF THE SECOND SUPERSDEDING INDICTMENT AND, IN THE ALTERNATIVE, MOTION TO CONTINUE TRIAL SETTING

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND .............................................................................................................. 2

III.  ARGUMENT AND AUTHORITIES ............................................................................ 4

   A.   Count Six of the Second Superseding Indictment Should be Dismissed............................ 4

   B.   In the Alternative, the Current Trial Setting Should be Continued................................. 11

IV.   CONCLUSION ................................................................................................................ 13

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**CASES**

*Abramski v. United States*,
   134 S.Ct. 2259 (2014) .......................................................................................................... 4

*Neder v. United States*,
   527 U.S. 1 (1999) ............................................................................................................... 12

*United States v. Cessa*,
   861 F.3d 121 (5th Cir. 2017) ............................................................................................... 9

*United States v. Davis*,
   226 F.3d 346 (5th Cir. 2000) ............................................................................................... 9

*United States v. Dignam*,
   716 F.3d 915 (5th Cir. 2013) ............................................................................................. 11

*United States v. Flores*,
   404 F.3d 320 (5th. Cir. 2005) .............................................................................................. 4

*United States v. Garcia*,
   Case No. SA-23-CR00238-JKP, 2024 WL 170780 (W.D. Tex. Jan. 12, 2024) .......................... 4

*United States v. Santos*,
   553 U.S. 507 (2008) ............................................................................................................. 8

*United States v. Silver*,
   864 F.3d 102 (2d Cir. 2017) ................................................................................................. 9

*United States v. Thomas*,
   847 F.3d 193 (5th Cir. 2017) ............................................................................................... 9

*United States v. Thrush*,
   738 F.Supp.3d 902 (E.D. Mich. 2024) ................................................................... 5, 6, 7, 8, 11

*United States v. Thrush*,
   Case No. 1:20-cr-20365, 2024 WL 3868193 (E.D. Mich. Aug. 19, 2024) ................................ 7

**STATUTES**

15 U.S.C. § 636(a)(36)(F)(i) ........................................................................................................ 7
15 U.S.C. § 636(a)(36)(G)(i)(II) ................................................................................................. 8
18 U.S.C. § 666 ............................................................................................................................ 9
18 U.S.C. § 1344 .......................................................................................................................... 5
18 U.S.C. § 1956 .......................................................................................................................... 9
18 U.S.C. § 3161(h)(7)(B) ......................................................................................................... 11
18 U.S.C. § 3161(h)(7)(B)(iv) ................................................................................................... 11

**RULES**

Fed. R. Crim. P. 12 ................................................................................................................. 4, 11
Fed. R. Crim. P. 12(b)(1) ............................................................................................................. 4

TO THE HONORABLE COURT:

Defendant Robert Jeffrey Mueller ("**Mr. Mueller**" or "**Defendant**") files this Motion to Dismiss Count Six of the Second Superseding Indictment and, in the Alternative, Motion to Continue Trial Setting (the "**Motion**"), and in support would respectfully show:

## I.        INTRODUCTION

The Government has struggled to articulate what exactly it claims Mr. Mueller did to violate the law. On March 19, 2026, more than a year after the original Indictment and as the parties were preparing for trial, the Government filed a Superseding Indictment that fundamentally rewrote its allegations against Mr. Mueller. That pleading, apparently in response to pretrial motions filed by Mr. Mueller, significantly expanded the alleged manner and means underlying the five wire fraud counts asserted against Mr. Mueller.

In its responses to Mr. Mueller's pretrial motions challenging the terms of the Superseding Indictment, the Government expanded its allegations further, arguing that the terms of the Superseding Indictment should be read broadly to include issues far beyond the relatively narrow focus of the original Indictment. The Government's last-minute changes to its allegations led the Court to grant Mr. Mueller's Opposed Motion to Continue, resulting in the current August 17, 2026 trial date.

But the exchange of pretrial motions has apparently prompted the Government, once again, to rewrite its allegations against Mr. Mueller on the eve of trial. The Second Superseding Indictment, filed on June 3, 2026, adds an entirely new charge against Mr. Mueller—bank fraud, alleging that Mr. Mueller did not spend the proceeds of a Paycheck Protection Program ("**PPP**") loan on approved expenses. This allegation may be new to this case but it is not new to the

1

Government, which has been in possession of the relevant evidence for many years and did not act until weeks before trial.

But in its scramble to find a viable claim against Mr. Mueller, the Government has overreached. Its new bank fraud charge is based on the premise that the PPP program requires the specific proceeds of a PPP loan to be spent on approved expenses. But the program requires no such thing. To the contrary, the PPP program permits borrowers to comingle loan proceeds with other funds, so long as the borrower ultimately spends the amount of the PPP loan on the required expenses. Here, it is undisputed that Mr. Mueller *did* spend well more than the amount of the PPP loan on payroll and other permitted expenses. The tracing of bank accounts on which the Government bases its claim is thus not legally required. Count Six must therefore be dismissed.

In the alternative, should the Court deny the motion to dismiss, Mr. Mueller requests the Court continue the trial setting to permit Mr. Mueller adequate time to obtain relevant evidence and secure the attendance of witnesses regarding this new claim, potentially including Government witnesses to testify regarding the requirements of the PPP program.

## II.     BACKGROUND

The Government filed the original Indictment against Mr. Mueller on November 6, 2024. *See* ECF No. 1. It asserted eight counts of wire fraud and alleged that Mr. Mueller engaged in a scheme to defraud investors in his companies (referred to collectively herein as the "Deeproot companies") from April 2019 to June 2021. *Id.* The Indictment alleged that Mr. Mueller carried out this scheme through manner and means that included a defined list of material misstatements and omissions. *Id.*

Starting in February 2025, the parties engaged in multiple rounds of document discovery, through which the Government alone has produced over 50,000 pages of discovery. The

Government produced additional documents related to its new allegations on June 24, 2026. Mr. Mueller anticipates producing additional documents relevant to the Government's recent allegations in the coming weeks, depending on the Court's ruling on this Motion.

The parties agreed to continue the trial date on three occasions. The Court granted these motions and entered new scheduling orders on February 26, June 27, and October 24, 2025, which resulted in a trial date of April 13, 2026. *See* ECF No. 25; ECF No. 29; ECF No. 31.

On March 18, 2026, the Government secured a Superseding Indictment. *See* ECF No. 39. The Superseding Indictment dismissed three of the eight counts included in the original Indictment and rewrote the alleged manner and means. *Id.* Among other changes, the Government replaced several of the specific enumerated alleged misrepresentations identified in the original indictment with a broadly worded catch-all allegation that Mr. Mueller misled investors as to the "financial condition" of the Deeproot companies. ECF No. 39 ¶ 14.

On March 25, 2026, Mr. Mueller filed an Opposed Motion to Continue Trial Setting, which sought to extend the trial date based on the Superseding Indictment and recent Government representations regarding the scope of its allegations. *See* ECF No. 48. In a March 26, 2026 letter, the Government argued that it interpreted the phrase "financial condition" broadly to include allegations regarding the manner in which Mr. Mueller spent money received from investors, among other allegations. *See* ECF No. 51. In response, Mr. Mueller filed a Motion for a Bill of Particulars, seeking clarity on the scope of the Government's allegations. *See* ECF No. 60. Mr. Mueller also filed a Motion in Limine to exclude certain evidence of the Government. *See* ECF No. 61.

On April 1, 2026, the Court granted the Motion to Continue, setting the current trial date

of August 17, 2026.[1] On June 1, 2026, the Court granted Mr. Mueller's Motion for a Bill of Particulars and granted in part and denied in part Mr. Mueller's Motion in Limine. *See* ECF No. 69. On June 3, 2026, the Government filed a Second Superseding Indictment, which made minor changes to allegations relating to Counts One through Five and added a new Count Six. *See* ECF No. 70.

### III.   ARGUMENT AND AUTHORITIES

#### A.  <u>Count Six of the Second Superseding Indictment Should be Dismissed.</u>

Federal Rule of Criminal Procedure 12 permits a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Permitted pretrial motions include a motion to dismiss an indictment on the ground that "there is a defect in the indictment," including the "failure to state an offense." Fed. R. Crim. P. 12. When the relevant facts are undisputed, a court may "dismiss[] an indictment based on the resolution of a legal question in the presence of undisputed facts." *United States v. Flores*, 404 F.3d 320, 325 (5th. Cir. 2005), *abrogated on other grounds by Abramski v. United States*, 134 S.Ct. 2259, 2274 (2014); *United States v. Garcia*, Case No. SA-23-CR00238-JKP, 2024 WL 170780, at *1 (W.D. Tex. Jan. 12, 2024) ("If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes this court to rule on the motion.").

Count Six of the Second Superseding Indictment alleges that, on April 9, 2021, Mr. Mueller applied for a PPP loan in the amount of $759,917 from Cross River Bank, which was allegedly eligible to provide PPP loans. *See* ECF No. 70 ¶ 7.[2] The Coronavirus Aid, Relief, and Economic

---

[1] Based on communications with the Court, the parties understand that jury selection will take place on Monday, August 10 and trial will begin on Thursday, August 14, 2026.

[2] The paragraph numbering in the Second Superseding Indictment restarts at "1" two times on page 5. *See* ECF No. 70 at 5. The paragraph citations herein refer to the number starting on page 5.

Security ("**CARES**") Act created the PPP program to provide forgivable loans to small businesses for payroll and other expenses. *See id.* ¶¶ 2-3. The Government alleges that Mr. Mueller falsely promised that he would use loan proceeds on PPP-approved expenses, including "Payroll Costs," "Rent/Mortgage Interest," and "Covered Operations Expenditures." *Id.* ¶ 7. It further alleges that Mr. Mueller "used the majority of the loan to pay investors in deeproot Funds." *Id.* ¶ 9. Finally, the Government alleges that these actions defrauded Cross River Bank in violation of 18 U.S.C. Section 1344. *Id.* ¶ 10.

The Government does not dispute that its allegations in Count Six are premised on the assertion that a PPP borrower must spend the ***specific funds*** obtained through a PPP loan only on approved expenses. It apparently intends to prove that Mr. Mueller violated Section 1344 by tracing the PPP funds from the deposit in a Deeproot Tech, LLC ("**Deeproot Tech**") bank account, through subsequent transfers, to specific expenses that follow that deposit and transfers, some of which allegedly were not for PPP-approved expenses. But those allegations are based on a flawed understanding of the law. The CARES Act does ***not*** require a borrower to segregate PPP funds in a separate bank account or to limit spending of those specific funds on approved expenses. Rather, a borrower is permitted to comingle PPP funds with other funds. So long as the borrower ultimately spends the total amount of the PPP loan on approved expenses, the borrower has complied with the terms of the loan and can apply for loan forgiveness.

The only court that has apparently addressed this issue in a criminal case squarely rejected the theory advocated by the Government in this case. In *United States v. Thrush*, 738 F.Supp.3d 902 (E.D. Mich. 2024), the Government charged the defendant with wire fraud for falsely promising to spend PPP loans in the manner required by SBA regulations. *See id.* at 902. The court noted that the parties' expert witnesses planned to offer conflicting testimony as to whether SBA

5

regulations required PPP funds to be kept in a segregated account and spent only on the PPP-approved expenses *See id.* at 903. Holding that the Court would determine the relevant law, the Court asked for supplemental briefing on SBA regulations. *See id.*

In its brief, the Government (through the Department of Justice's Tax Division) stated that "it would ***not*** argue that the law requires PPP loan proceeds to be deposited into a borrower's bank account separate and apart from other cash funds." *Id.* at 904 (emphasis added).[3] The Government nonetheless argued that the statute's use of the term "proceeds" required that borrowers spend "specific *loan proceeds*" on PPP-approved expenses. *See id.* (emphasis in original). The defendant, on the other hand, argued that there was no legal authority supporting the Government's interpretation of "proceeds" and that a borrower could use "any funds . . . to pay for PPP-approved expenses." *Id.* at 904-05.

The court sided with the defendant. The court first noted that "the Government cites no rule, regulation, statute, or legal precedent in support of its contention." *Id.* at 904.[4] It further rejected the Government's reading of the word "proceeds," noting that the "term is undefined in all relevant PPP applications, regulations, and applicable statutes." *Id.* at 904-05. The court also noted that PPP loan forgiveness documents included language that ran counter to the Government's interpretation of "proceeds," suggesting that "only the *total amount of money* [be] spent on PPP-approved expenses." *Id.* at 905 (emphasis in original). The court therefore concluded "that PPP-loan funds *were* fungible and *could* be comingled with a borrower's other funds to pay PPP-

---

[3] The Government's brief in *Thrush* explained the reference to segregating accounts to a misunderstanding of Government counsel's remarks. *See* Government's Response to Court Inquiry Regarding Authority Governing Paycheck Protection Program Loan Fund Expenditures, *United States v. Thrush*, Case No. 1:20-CR-20365, ECF No. 173 (filed June 6, 2024) at 6, n.2.

[4] The court also noted it had "been unable to identify *any* supporting authority elsewhere" for the Government's position. *Thrush*, 738 F.Supp.3d at 905 (emphasis in original).

approved expenses." *Id.* (emphasis in original). The court thus approved the following jury instruction:

> There was no PPP Rule or other law prohibiting the comingling of PPP loan proceeds with other borrower funds. To that end, PPP loan proceeds were fungible, meaning they were interchangeable with other funds of the borrower.

*Id.* The court also ruled that evidence of the defendant's payments of PPP-approved expenses up to the total of the loan would be admissible, while payments on other expenses were "irrelevant" and would be excluded." *Id.*[5]

The court in *Thrush* reached the correct conclusion. First, the Government effectively conceded in *Thrush* that no statute or regulation requires a borrower to segregate PPP-loan funds in a separate account. *See Thrush*, 738 F.Supp.3d at 904. Moreover, as the *Thrush* court noted, there is nothing in relevant statutes or regulations that requires a defendant to spend specific loan proceeds on PPP-approved expenses. *See id.* at 905. The statute states only that an eligible loan recipient "may . . . use the proceeds of the covered loan" for approved expenses. 15 U.S.C. § 636(a)(36)(F)(i). But the term "proceeds" is not defined and nothing in the above sentence (or any other part of the statute) indicates that "proceeds" should be read to require that PPP-expenses be directly traceable to the specific funds transferred to a bank account from a PPP loan. *See id.* Indeed, other provisions of the statute support the opposite inference. The statute requires the borrower to sign a certification "acknowledging that ***funds will be used***" to make approved payments, suggesting that the borrower may use any "funds" to pay PPP-approved expenses. *See*

---

[5] After the court's ruling, the Government informed the court that its accounting indicated the defendant spent an amount equivalent to the PPP loan on PPP-approved expenses and agreed not to pursue claims that the defendant fraudulently misrepresented an intent to misuse PPP proceeds. *See United States v. Thrush*, Case No. 1:20-cr-20365, 2024 WL 3868193, at *3 (E.D. Mich. Aug. 19, 2024). Instead, the Government narrowed its count and proceeded only on allegations that the defendant misrepresented his eligibility for a PPP loan (i.e., that he was not under indictment). *Id.*

7

15 U.S.C. § 636(a)(36)(G)(i)(II) (emphasis added). When, as here, the term "proceeds" is undefined and the rest of the statute does not support the Government's proposed interpretation of the word, the resulting ambiguity in a criminal statute should be read in favor of a criminal defendant. *See United States v. Santos*, 553 U.S. 507, 513 (2008) (noting that the term "proceeds" in money laundering statute was not defined and holding that the "rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them").

The PPP loan application documents also do not support the Government's interpretation of the statute. The documents executed by Mr. Mueller (and recently produced in discovery by the Government) appear to be substantively the same as those at issue in *Thrush*. *See* Ex. A. Those documents do not require PPP funds to be segregated in a separate account. *See id.* They also do not expressly state that borrowers must spend the specific dollars transferred from the PPP lender on PPP-approved expenses. *See id.* The loan application requires that a borrower certify that "the funds will be used" for PPP-approved expenses but does not require that the funds be segregated or traced. *Id.* at 3. Moreover, as the court in *Thrush* emphasized, the application notes that "loan forgiveness will be provided for the ***sum*** of documented" PPP-expenses. *Id.* (emphasis added); *See Thrush*, 738 F.Supp.3d at 905. Permitting a borrower to seek reimbursement for the "sum" of covered expenses suggests that the borrower may comingle PPP funds with other funds and then seek reimbursement for the "sum" total spent on PPP-approved expenses.

Moreover, as the *Thrush* court noted, the Government's concession that PPP funds can be comingled with other borrower funds (along with the absence of clear direction to the contrary) required the conclusion that the "PPP loan proceeds were fungible, meaning they were interchangeable with other funds." *Id.* That is because once the PPP funds are comingled with other funds it is functionally impossible—or at least extremely impractical—to tie particular

8

expenditures to particular deposits. For this reason, absent clear statutory direction to the contrary, courts evaluating other statutes routinely conclude that money is "fungible" and refuse to require the tracing of money that is commingled with other funds. *See United States v. Cessa*, 861 F.3d 121, 135 (5th Cir. 2017) (holding that the "government is under no duty to trace the individual funds" to prove money laundering under 18 U.S.C. § 1956); *United States v. Thomas*, 847 F.3d 193, 202-03 (5th Cir. 2017) (holding that 18 U.S.C. § 666 does not require a connection between federal money and the offense, in part because "[m]oney is fungible" and "money can be drained off here because a federal grant is pouring in there" (internal quotation and citation omitted)); *United States v. Davis*, 226 F.3d 346, 357 (5th Cir. 2000) ("Obviously, when tainted money is mingled with untainted money in a bank account, there is no longer any way to distinguish the tainted from the untainted because money is fungible.").[6]

Indeed, the undisputed documents by the Government in this case show the folly of attempting to trace commingled funds. The PPP loan at issue in Count 6 was for **$759,917** and was deposited in Deeproot Tech's checking account on April 12, 2021. *See* Ex. A; Ex. B (Deeproot Tech checking account statements). These funds were commingled in that account with approximately **$47,778.87** in funds from other sources, including a preexisting balance and funds transferred to that account on the same day. *See* Ex. B at 3. The following day, **$277,269.52** was transferred to a different Deeproot bank account, where it was commingled with **$494,753.76** from

---

[6] The Fifth Circuit does permit a rudimentary form of tracing in prosecutions under Section 1957—which, unlike Section 1956, concerns "property derived from" illegal activities—holding that when the "aggregate amount withdrawn from an account with commingled funds exceeds the clean funds, individual withdrawals may be said to be of tainted money." *See Davis*, 226 F.3d at 357. But even that holding is the "minority view," as most Circuits do not require any tracing to prove money launder under Section 1957. *See United States v. Silver*, 864 F.3d 102, 115 (2d Cir. 2017) ("Because money is fungible, once funds obtained from illegal activity are combined with funds from lawful activity in a single account, the 'dirty' and 'clean' funds cannot be distinguished from each other."). In any event, as noted below, the Deeproot Entities spent far more on PPP-approved expenses than the borrowed amount, and thus would have satisfied any tracing methodology borrowed from the Fifth Circuit's Section 1957 cases.

other sources. *See* Ex. C at 1, 4. The commingled funds in both accounts were then spent on a variety of different expenses, including multiple payments for payroll, business software, rent, and other PPP-approved expenses within two weeks of the deposits. *See* Ex. B at 3-4 (relevant transactions highlighted); Ex. C at 3 (relevant transactions highlighted). Over the next several weeks, millions of dollars from other sources were deposited into these same accounts, comingled with the remaining PPP funds, and spent on a variety of expenses, including PPP-approved expenses. *See* Ex. B; Ex. C. The CARES Act, relevant regulations, and applicable case law suggest no credible way for the Government to establish that a particular payment specifically came from PPP funds, as opposed to the nearly $500,000 already in the same back accounts or the millions of dollars deposit afterwards.

Adopting the rule established in *Thrush*, the undisputed records conclusively demonstrate that the Deeproot companies spent more than the amount of the PPP loan on approved expenses. Payroll tax records recently produced by the Government in discovery demonstrate that Deeproot Tech spent a total of **$731,583.73** on payroll in Q2 and Q3 of 2021. *See* Ex. D. Bank records indicate that Deeproot Tech alone spent an additional **$28,767.13** on rent on April 29 and 30, 2021, alone. *See* Ex. B at 3 (relevant transactions highlighted). Just these two categories of expenses total **$760,350.86**, more than the total borrowed through the PPP loan. That total does not include other PPP-approved expenses paid by Deeproot Tech, including utilities, rent payments in June 2021, business software payments, and other approved expenses. *See id.* at 3, 11. It also does not include payroll payments made by other Deeproot entities, which total another **$437,480.68** between April and July 2021. *See* Ex. E; Ex. F.[7]

---

[7] Even if the Government's tracing theory is permitted, Mr. Mueller disputes that such tracing would show that funds tied to the PPP loan were spent on non-PPP approved expenses, among other potential defenses to the Government's claims.

The undisputed evidence therefore demonstrates that Mr. Mueller spent well more than the total borrowed through the PPP loan on PPP-approved expenses. As the law permitted Mr. Mueller to commingle PPP loan funds with funds from other sources, that total amount of spending complied with Mr. Mueller's obligations under the CARES Act. His representations to Cross River Bank that he intended to spend the total amount borrowed on PPP-approved expenses thus cannot be shown to be false. Count Six therefore fails to state an offense and must be dismissed. *See* Fed. R. Crim. P. 12.[8]

### B.  <u>In the Alternative, the Current Trial Setting Should be Continued.</u>

In the alternative, if the Court elects not to dismiss Count Six and permits the parties to go to trial on the Second Superseding Indictment, Mr. Mueller respectfully moves to continue the August 17, 2026 trial setting.

"A continuance granted by the district court can toll the speedy trial clock—whether granted *sua sponte* or on a party's motion—if the judge grants the continuance 'on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.'" *United States v. Dignam*, 716 F.3d 915, 921 (5th Cir. 2013) (quoting 18 U.S.C. § 3161(h)(7)(B)). The Court may consider a variety of factors to determine whether a continuance serves the "ends of justice," including "whether failure to grant a continuance would deny counsel for the defendant . . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.'" *Id.* (quoting 18 U.S.C. § 3161(h)(7)(B)(iv)).

As noted above, the Government obtained a Second Superseding Indictment that added a new charge on June 3, 2026, approximately two months before trial. This new bank fraud charge

---

[8] If this Motion is denied, Defendant reserves the right to seek the same instruction and evidentiary rulings granted by the court in *Thrush*. *See Thrush*, 738 F.Supp.3d at 905.

involves an entirely different alleged scheme, a different victim, and different factual and legal issues than raised in previous indictments. The Government has been producing documents related to this new charge up and through June 24, 2026. To the extent the Government has interviewed representatives of Cross River Bank—presumably necessary to establish the materiality of the alleged misrepresentations—the Government has not yet produced any discovery from that interview. *See Neder v. United States*, 527 U.S. 1, 20 (1999) (holding that materiality is an element of bank fraud). To the extent the Government intends to introduce summary exhibits or other documents to support its "tracing" theory (beyond bank records), it has not yet produced those documents.

This late-added bank fraud charge leaves Mr. Mueller with substantial work necessary to prepare for trial and very little time to do it. Mueller will need to identify, review, and produce documents that may be relevant to defending against this claim, potentially including any communications and other relevant documents contained in the hundreds of thousands of pages of document produced in the various civil cases regarding the Deeproot companies. He must also identify and interview relevant witnesses, including representatives of Cross River Bank and potential experts. Depending on the Court's order on this Motion and other potential motions (including those concerning instructions and new motions in limine), Mr. Mueller may need to seek the testimony of a representative of the Small Business Administration on the requirements of SBA regulations, its enforcement of those regulations, and the practices of PPP loan recipients, among other potentially relevant issues. Such testimony will likely require a *Touhy* request, a potentially time-consuming process. Given that trial is set in approximately one month—and the deadlines to submit a plea agreement and to file pretrial motions are July 24 and 31, 2026—Mr.

Mueller will have limited time to prepare to defend the new issues raised by Count Six, in addition to preparing for the other issues recently raised issues.[9]

The current trial setting will therefore limit Mr. Mueller's ability to adequately prepare for trial and thereby result in prejudice to Mr. Mueller. If the Court elects not to dismiss Count Six, Mr. Mueller respectfully requests the Court reset the trial to a date that provides Mr. Mueller adequate time to prepare.

Undersigned counsel has conferred with counsel for the Government, who indicated the Government is opposed to the relief requested herein.

## IV.   CONCLUSION

For the reasons stated above, Mr. Mueller respectfully requests the Court dismiss Count Six of the Second Superseding Indictment or, in the alternative, continue the trial setting in this case.

DATED: July 6, 2026.

Respectfully submitted,

**DAVIS & SANTOS, PLLC**

By: */s/ H. Jay Hulings*
Jason M. Davis
State Bar No. 00793592
Email: jdavis@dslawpc.com
H. Jay Hulings
State Bar No. 24104573
E-mail: jhulings@dslawpc.com
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

***Attorneys for Defendant***
***Robert Jeffrey Mueller***

---

[9] As noted above, the Government expanded the scope of its allegations in its responses to pretrial motions, including in its response to Mr. Mueller's Motion in Limine. *See* ECF No. 65. The Government filed its Bill of Particulars confirming the scope of its allegations on June 25, 2026. *See* ECF No. 76.

**CERTIFICATE OF CONFERENCE**

I certify that on June 24, 2026, the undesigned conferred with counsel for the United States, who confirmed that the United States is opposed to the relief requested herein.

*/s/ H. Jay Hulings*
H. Jay Hulings


**CERTIFICATE OF SERVICE**

I certify that on July 6, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

*/s/ H. Jay Hulings*
H. Jay Hulings