**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

<table>
<tr><td>

**UNITED STATES OF AMERICA**

    **Plaintiff**

      **v.**

**ROBERT JEFFREY MUELLER**

    **Defendant**

</td><td>

**Case No.: 5:24-CR-00563-XR**

</td></tr>
</table>

<u>**DEFENDANT'S REPLY REGARDING MOTION TO DISMISS COUNT SIX OF THE SECOND SUPERSDEDING INDICTMENT AND, IN THE ALTERNATIVE, MOTION TO CONTINUE TRIAL SETTING**</u>

TO THE HONORABLE COURT:

Defendant Robert Jeffrey Mueller ("**Mr. Mueller**" or "**Defendant**") files this Reply Regarding Motion to Dismiss Count Six of the Second Superseding Indictment and, in the Alternative, Motion to Continue Trial Setting, and in support would respectfully show:

## I.      INTRODUCTION

As noted in Mr. Mueller's Motion to Dismiss Count Six of the Second Superseding Indictment and, in the Alternative, Motion to Continue Trial Setting (ECF No. 77, the "**Motion**"), Count Six of the recently obtained Second Superseding Indictment is premised on an invalid legal theory. Contrary to the Government's claims, the Paycheck Protection Program ("**PPP**") did not require a borrower to spend specific PPP loan funds exclusively on approved expenses. Rather, proceeds of a PPP loan can be commingled with other funds, and a borrower need only spend the sum total of the amount borrowed on PPP-approved expenses. As it is undisputed that Deeproot Tech, LLC ("**Deeproot Tech**") spent more than the sum of its PPP loan on payroll and other

approved expenses, the Government's bank fraud allegations do not describe a criminal offense and must be dismissed.

In its Response in Opposition to Defendant's Motion to Dismiss and to Continue (ECF No. 79, the "**Response**"), the Government does not directly challenge the Motion's interpretation of the PPP program. Rather, it attempts (and fails) to distinguish the case law underlying that interpretation. It also purports to articulate—apparently for the first time in its Response—a new rule for PPP borrowers, claiming that such borrowers may not transfer PPP funds from the borrower's bank account to the account of a related entity. There is no statutory, regulatory, or policy basis for this novel interpretation of the PPP program, which cannot be imposed on Mr. Mueller years after the loan through a criminal prosecution. The Court should therefore reject the Government's arguments and dismiss Count Six. If it elects not to do so, in the alternative, Mr. Mueller requests the Court continue the current trial setting to permit Mr. Mueller to adequately prepare for this new charge.

## II.    ARGUMENT AND AUTHORITIES

### A.  The Court can consider undisputed evidence in a Rule 12 motion to dismiss.

The Government spends much of its Response arguing that a motion to dismiss may not go outside the four corners of an indictment. But that is simply not the law.

"If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes this court to rule on the motion." *United States v. Garcia*, Case No. SA-23-CR00238-JKP, 2024 WL 170780, at *1 (W.D. Tex. Jan. 12, 2024); *see also United States v. Flores*, 404 F.3d 320, 325 (5th. Cir. 2005), *abrogated on other grounds by Abramski v. United States*, 134 S.Ct. 2259, 2274 (2014) (holding that a court may "dismiss[] an indictment based on the resolution of a legal question in the presence of undisputed facts").

Here, the facts relevant to the Motion are undisputed. As detailed in the Motion, on or about April 9, 2021, Mr. Mueller executed a PPP loan on behalf of Deeproot Tech for $759,917. Before the end of July 2021, Deeproot Tech spent more than the loan amount on payroll, rent, and other approved expenses under the PPP program. Mr. Mueller deposited the PPP loan proceeds in an account in which he deposited funds from other sources and transferred funds to bank accounts for other Deeproot entities. Mr. Mueller used funds in these accounts to make payments for expenses that were not PPP-approved, including monthly payments to investors in the 575 Fund. The Government's Response does not—and cannot—dispute any of these facts, which are conclusively established in tax records, bank account statements, and other payroll records produced by the Government in discovery. *See* Motion, Exs. B, C.

Instead, the Government claims that whether Mr. Mueller "used the loan funds to pay previous investors" is disputed. Response at 4.[1] But that argument entirely misses the point. The dispute is not whether Mr. Mueller "used the loan funds to pay previous investors," but whether there was anything improper in "using" loan funds to pay expenses not approved by the PPP program. That dispute turns on a question of law, not fact. Specifically, the Government's allegations require the Court to conclude that the PPP program required that the specific funds provided through a PPP loan be spent solely on PPP-approved expenses. If the PPP does not include such a requirement—i.e., a borrower need only spend the total amount of the loan on PPP-approved expenses within a certain amount of time—then there was nothing fraudulent about Mr.

---

[1] The Response cites disagreements with the Motion's discussion of Mr. Mueller's use of funds in this case as evidence of facts that are in dispute. *See* Response at 4-5. That argument ignores the Motion, which cited the use of funds in this case as an illustration of the difficulties inherent in attempting to trace funds commingled with funds from other sources. *See* Motion at 9-10. As noted in the Motion and above, the PPP program did not require that funds be traced at all, and thus any disagreements regarding whether the funds can be "traced" can be reserved for other motions or for trial, if necessary.

Mueller's promise or the manner in which he spent funds. Count Six would therefore not allege criminal conduct and would need to be dismissed.

As the requirements of the PPP program are a question of law, not a disputed question of fact, the Court is entitled to rule on the Motion.

### B.  <u>The Government cannot state a claim for bank fraud under the undisputed facts.</u>

It appears that the Government has attempted on one prior occasion to prosecute a person based on a theory that the PPP program required a borrower to use specific loan funds solely on PPP-approved expenses. That attempt was in *United States v. Thrush*, 38 F.Supp.3d 902 (E.D. Mich. 2024), in which the Court squarely rejected the interpretation of the PPP program advanced by the Government in that case and here.

As detailed in the Motion, the *Thrush* court found no support in the statutory text, any relevant regulations, or the PPP loan documents for the Government's claim the PPP program required that specific loan funds be used exclusively for PPP-approved expenses. *Id.* at 904-05. To the contrary, noting the Government's concession that the PPP did not require that loan funds be kept in segregated accounts, the court concluded "that PPP-loan funds *were* fungible and *could* be commingled with a borrower's other funds to pay PPP-approved expenses." *Id.* at 905 (emphasis in original). The Court therefore approved a jury instruction that "PPP loan proceeds . . . were interchangeable with other funds of the borrower" and excluded any evidence regarding use of funds to pay for non-PPP approved expenses. *Id.*

As further detailed in the Motion, the *Thrush* court got the law right. Nothing in the statutory text, the loan documents, or other sources require a PPP borrower to segregate funds or use specific loans funds solely on PPP-approved expenses. Motion at 7-9. Moreover, courts

generally do not require the tracing of specific funds that have been commingled with funds from other sources, as it is nearly impossible (or at least highly impractical) to do so effectively. *See id.*

The Government does not directly challenge the holding or reasoning of *Thrush*, or the Motion's contention that *Thrush* correctly stated the requirements of the PPP program. Instead, it attempts to distinguish *Thrush* from this case in several ways, none of which is successful.

First, the Response argues that the *Thrush* opinion concerned the proper jury instruction regarding the PPP program, which the Government contends is not relevant to Mr. Mueller's Motion to Dismiss. *See* Response at 5. But jury instructions are where courts explain the law to juries, and the *Thrush* instruction captured the court's interpretation of the law—i.e., that the PPP program did not require a borrower to spend specific PPP funds solely on approved expenses. *See Thrush*, 38 F.Supp.3d at 905-05. Moreover, the *Thrush* court did more than approve jury instructions. It also excluded evidence regarding payment of expenses other than PPP-approved expenses, which the court concluded were irrelevant given its conclusions of law regarding the PPP program. *See id.* at 905. The same rulings would render the Government's prosecution in this case legally untenable, as there is no dispute that Deeproot Tech spent more than the sum of the loan proceeds on PPP-approved expenses. Indeed, after the *Thrush* court's ruling on jury instructions, the defendant filed a motion to dismiss. *See United States v. Thrush*, Case No. 1:20-cr-20365, 2024 WL 3868193, at *3 (E.D. Mich. Aug. 19, 2024). After concluding that the defendant spent more than the loan proceeds on PPP-approved expenses, the Government abandoned its claims and opted to narrow its allegations.[2]

---

[2] The Response also argues that *Thrush* is irrelevant because the defendant there was charged with wire fraud, not bank fraud as asserted in Count Six. But the Government does not explain why the type of fraud charged would make a difference to instructions regarding the requirements of the PPP program.

Second, the Response argues that *Thrush* and its reasoning are inapplicable to this case because the *Thrush* defendant did not move funds between entities, while Mr. Mueller moved funds from a Deeproot Tech bank account to bank accounts in the names of other Deeproot entities. *See* Response at 6-8. This argument ignores *Thrush*, in which the defendant was accused of moving money from a bank account in the name of the borrower entity to the defendant's personal bank account. *See* Government's Response to Court Inquiry Regarding Authority Governing Paycheck Protection Program Loan Fund Expenditures, *United States v. Thrush*, Case No. 1:20-CR-20365, ECF No. 173 (filed June 6, 2024) at 4-5. But the argument also invents a requirement for the PPP program without any statutory, regulatory, or other legal basis. The Response does not cite a provision of the CAREs Act, any regulation of the Small Business Administration, or even language within PPP loan documents to support its claim that PPP funds cannot be transferred between related entities. Indeed, no such requirement exists. The Government simply made up a new requirement for use of PPP funds and asks the Court to apply that requirement against Mr. Mueller retroactively, years after the loan was issued, and in a criminal case. The court in *Thrush* rejected similar Government overreach in that case, and this Court should do the same.

Moreover, it is legally irrelevant whether Mr. Mueller moved funds between accounts tied to different Deeproot entities. As explained in the Motion, PPP loan funds were fungible—i.e., "interchangeable" with funds from other sources. Motion at 11-13; *see also Thrush*, at 905. It therefore did not matter whether Mr. Mueller spent the funds on non-approved expenses or transferred them to the accounts of related entities.[3] The PPP program only required that a borrower

---

[3] The allegation that transfers between funds was evidence of fraud is particularly baseless in this case, as it is undisputed that Mr. Mueller was the sole owner of all Deeproot entities and transfers between the entities was required by the interrelated nature of the entities. Moreover, the bank records show that the same entities to which Mr. Mueller allegedly transferred the PPP funds subsequently transferred back to Deeproot Tech the same amount or more than was received. *See* Motion, Exs. B-C.

6

spend the ***sum total*** of the PPP loan on approved expenses within the relevant time period. Here, it is undisputed that Deeproot Tech spent more than the total borrowed through the PPP program on payroll and other PPP-approved expenses within approximately three months of the loan. *See* Motion Exs. B-F. Mr. Mueller therefore fully complied with the PPP program, even if he transferred funds back and forth between accounts.

Third, the Response cites *United States v. Fatani*, 125 F.4th 755 (5th Cir. 2025) for the proposition that transfer of PPP funds to the accounts of non-borrowers is indicative of fraud. But that is not what *Fatani* held. There, the alleged scheme to defraud involved the submission of a loan application that falsely identified the borrower's "owner, payroll expenses, and number of employees and included fabricated supporting documents." *Id.* at 757 (noting that "[i]n reality, [the borrower] had no employees and no payroll"). On appeal, the defendant challenged the jury's findings that wire transfers of proceeds from the fraudulently obtained PPP loan were in furtherance of the scheme to defraud. *See id.* at 760-61. The court found that the evidence supported the jury's finding that transfers to co-conspirators were in furtherance of the scheme. *See id.* The case had nothing to do with requirements for using PPP funds and certainly did not announce a rule that the transfer of funds to an account held by a related entity was indicative of fraud. *See id.*

As the PPP program required only that the borrower pay the sum total of the amount borrowed on PPP-approved expenses, and as it is undisputed that Deeproot Tech complied with this requirement, Count Six does not state a criminal offense and must be dismissed.

C.  **In the alternative, the Court should extend the trial date.**

In the event the Court does not dismiss Count Six, the Motion requests in the alternative that the Court continue the trial setting to permit Mr. Mueller to prepare for Count Six. In its

Response, the Government mischaracterizers its own allegations and the evidence needed to prove and defend against them.

First, the Government claims that Count Six involves the same scheme to defraud as the previously alleged wire fraud allegations. *See* Response at 9-10. But that is plainly not the case. The wire fraud charges involved an alleged scheme to defraud investors in the Deeproot entities. In pretrial briefing, the Government claimed that Mr. Mueller failed to disclose to investors that Deeproot had obtained PPP loans and used those funds to pay for operations and make payments to investors. ECF No. 65 at 4.[4] But Count Six alleges something different—i.e., that Mr. Mueller defrauded the PPP ***lender*** by promising to use funds for PPP-approved expenses. This new charge thus involves a different victim (i.e., the bank), different factual questions (e.g., whether the representations were material to the lender), different documentary evidence (e.g., payroll and tax records), and different witnesses (e.g., a representative of the bank). Just because one of the alleged omissions grasped for in the most recent iteration of the Government's wire fraud allegations happened to involve the PPP program does not render these claims duplicative.

The Response also claims that "it was acknowledged" at the April 6 *Lafler* hearing the Government would supersede for a second time. Response at 10. But the Government did not commit to seeking a superseding indictment in that hearing. It only suggested that it ***might*** supersede and certainly did not suggest it intended to charge Mr. Mueller with bank fraud. The Government's statements also drew a warning from the Court not to wait until the last minute to obtain a superseding indictment. Yet, that is precisely what the Government did. It waited until approximately two months after the April 6 hearing—and a mere 68 days before jury selection— to obtain a new superseding indictment. That this superseding indictment came a few weeks further

---

[4] This allegation makes the same jury instruction granted in *Thrush*—i.e., that PPP funds are "interchangeable" with other funds—relevant in this case.

away from trial than their last superseding indictment does not absolve the Government of the consequences of rewriting its allegations at the last minute.

Third, the Response claims that a delay could "silence" the alleged victims. But the Government does not identify any witness who would not be able to testify if the trial were continued. It also ignores Mr. Mueller's repeatedly stated willingness to depose any witness who cannot testify at trial in person, including any investor in the Deeproot companies. Finally, the Response does not explain why the Government's preference to have investors testify live rather than by deposition could justify the prejudice that a trial on Count Six in August 2026 would impose on Mr. Mueller.

Therefore, if the Court does not dismiss Count Six, Mr. Mueller respectfully requests the Court continue the trial setting to permit Mr. Mueller to adequately prepare for trial.

### III.   CONCLUSION

For the reasons stated above and in the Motion, Mr. Mueller respectfully requests the Court dismiss Count Six of the Second Superseding Indictment or, in the alternative, continue the trial setting in this case. Mr. Mueller further requests any other relief to which he may be entitled.

DATED: July 20, 2026.

Respectfully submitted,

**DAVIS & SANTOS, PLLC**

By: /s/ H. Jay Hulings
    Jason M. Davis
    State Bar No. 00793592
    Email: jdavis@dslawpc.com
    H. Jay Hulings
    State Bar No. 24104573
    E-mail: jhulings@dslawpc.com
    719 S. Flores Street
    San Antonio, Texas 78204
    Tel: (210) 853-5882
    Fax: (210) 200-8395

    *Attorneys for Defendant*
    *Robert Jeffrey Mueller*

## CERTIFICATE OF SERVICE

I certify that on July 20, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

/s/ H. Jay Hulings
H. Jay Hulings

10